657 A.2d 478

N.C. HOUSING ASSOCIATES, # 100, PLAINTIFFS, v.
ELAYNE HIGHTOWER–COOPER, DEFENDANT.

Superior Court of New Jersey
Law Division Special Civil Part
Hudson County

Decided January 23, 1995.

---

[8] "The Bank has a security interest in your Account for any fees you haven't paid."

318

*Harry R. Howard* for plaintiff.

*Joseph Charles* for defendant (Ashley & Charles, attorneys).

ISSENMAN, J.S.C.

Plaintiff, the sponsor of a low and moderate income housing project, filed this summary dispossess action seeking to evict defendant tenant for materially breaching the covenant contained in her lease requiring her to recertify her income annually. Plaintiff proved compliance with the jurisdictional notice requirements mandated by the Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1, but did not serve defendant with the pre-eviction notices required by regulations adopted by the New Jersey Housing and Mortgage Finance Agency.

Three issues are raised by this proceeding:

1. May the court *sua sponte* vacate the judgment it improvidently entered?
2. Must the landlord prove compliance with these regulations as part of its *prima facie* case or is the landlord's non-compliance an affirmative defense to be raised or waived by the tenant?

3. Are the regulations adopted by the New Jersey Housing and Mortgage Finance Agency in conflict with the Anti-Eviction Act, and thus invalid?

The salient facts are essentially undisputed. Plaintiff is the sponsor of Presidential Plaza, a complex consisting of several multi-unit residential apartment buildings constructed with funds obtained through a low interest loan from the New Jersey Housing and Mortgage Finance Agency (the Agency) pursuant to the "New Jersey Housing and Mortgage Finance Agency Law of 1983" (the Act). *N.J.S.A.* 55:14K–1 to –44. As a condition of the loan, admission to the housing project is limited to people or families with low or moderate incomes. *N.J.S.A.* 55:14K–8a. Defendant is a tenant in the project, having been admitted approximately seven years ago.

To ensure compliance with the income requirements, the Legislature specifically provided that:

b. The agency *shall* by rules and regulations provide for the periodic examination of the income of any person or family residing in any housing project constructed, improved or rehabilitated with a loan from the agency.

[*N.J.S.A.* 55–14K–8b (emphasis added).]

Pursuant to this mandate, the Agency adopted regulations requiring the periodic recertification of tenants' income. *N.J.A.C.* 5:80–20.5. The regulations also require a specific procedure to be followed by the sponsor in notifying the tenant that he or she must recertify their income and the consequence of potential eviction if they fail to do so. *Ibid.*

As a result of these regulations, the lease between the parties contained the following covenant:

8. Tenant shall furnish to landlord by March 1st of each year an income certification for the preceding calendar year. The income certification shall be on forms required by the New Jersey Housing and Mortgage Finance Agency and/or required pursuant to the Internal Revenue Code. Tenant's failure to timely file and/or truthfully complete the certification shall be a material breach of the lease and shall permit landlord to terminate the lease and commence eviction proceedings to remove tenant.

Plaintiff commenced this action to dispossess defendant pursuant to *N.J.S.A.* 2A:18–61.1e which provides for eviction if:

The person has continued, after written notice to cease, to substantially violate or breach any of the covenants or agreements contained in the lease for the premises where a right of reentry is reserved to the landlord in the lease for a violation of such covenant or agreement, provided that such covenant or agreement is reasonable and was contained in the lease at the beginning of the lease term.

Plaintiff alleged that defendant failed to provide a completed income certification for year-end 1992 and year-end 1993. Plaintiff served the requisite statutory notice to cease upon defendant, advising her that she was in violation of her lease covenant. When defendant did not cure the breach, plaintiff then served the statutory termination notice one month prior to the institution of this action. *N.J.S.A.* 2A:18–61.2b.

Initially defendant defaulted and a warrant for removal issued; however the default was vacated, and a plenary hearing was held. At the trial, no reference was made to the regulations. Neither counsel raised the issue, and no proofs were adduced on that subject. The court was unaware of the existence of the regulations.[1]

The court found that defendant had failed to recertify her income and was thus in substantial violation of her lease covenant, which covenant was found to be reasonable. The court opined that since the landlord had demonstrated "strict compliance" with the provisions of the Anti–Eviction Act, it was therefore entitled to a judgment of possession. *Ashley Court v. Whittaker,* 249 *N.J.Super.* 552, 556, 592 *A.2d* 1228 (App.Div.1991).

Within a week after entry of the judgment, the court discovered the regulations, and on notice to both parties, the court *sua sponte* vacated the judgment. The record was opened for the submission of further evidence at the discretion of either party, and the court requested briefs and oral argument to determine whether or not plaintiff was entitled to a judgment of possession, given its failure

---

[1] One would think that at a bare minimum, plaintiff would be aware of the existence of regulations that infuse its daily operations. The lease which plaintiff drafted refers to them on its inception page.

to comply with the notice requirements mandated by the regulations.

Plaintiff raises essentially three arguments: first, that the court has no authority to vacate the judgment; second, that its failure to comply with the regulations is an affirmative defense not raised by the defendant and thus waived—and certainly not revivable by the court's *sua sponte* reconsideration of its judgment; and finally, the regulations only apply to those cases wherein the non-certifying tenant exceeds the income requirements and becomes an ineligible tenant; and since it was stipulated that, notwithstanding defendant's failure to recertify her income, she was still income-qualified to remain as a tenant, the regulations do not apply to the case at bar. Alternatively, if they apply, the Agency has created more onerous notice requirements than those required by the Anti–Eviction Act, and this constitutes an impermissible usurpation of the legislative function, rendering the regulations *ultra vires.*

■ First and foremost, this court has found no rule or New Jersey case specifically addressing a court's right to vacate its own judgment which was entered inadvertently without consideration of applicable law. However, it is a well-entrenched legal concept that a court may vacate a judgment on its own motion. *See, e.g., Jerkins v. McKinney,* 533 *S.W.*2d 275 (Tenn.1976) (judge may *sua sponte* grant relief when circumstances require); *Huso v. Bismarck Public School Bd.,* 219 *N.W.*2d 100 (N.D.1974) (court has inherent power on its own to vacate judgment when it has made a mistake). If the judgment herein were void, the court would be duty-bound to vacate it *sua sponte. Collyer v. McDonald,* 123 *N.J.L.* 547, 10 *A.*2d 284 (Sup.Ct.1940).

The primary obligation of a court is to conduct a fair proceeding and a proceeding cannot be said to be fair if the tribunal rendering the decision does so without reference to the law relating to the subject matter. Indeed, one could say perhaps that this constitutes a miscarriage of justice which in and of itself authorizes a court to grant a new trial. *R.* 4:49–1(c).

■ Clearly, the court herein had the duty and authority to vacate this judgment of possession *sua sponte.* It was done a short time after entry, on notice to the parties, and before plaintiff took any steps in reliance upon it. Plaintiff was not prejudiced thereby. Under the circumstances, for the court to do anything less would violate the spirit of *R.* 1:1–2 (absent a rule, court to proceed with purpose of securing just determination).

■ Plaintiff next argues that its failure to comply with the time and notice requirements contained in the regulations is an affirmative defense to the summary dispossess proceeding, which tenant did not raise and thus waived. Plaintiff sees no obligation to prove compliance with the regulations as part of its *prima facie* case.

The fundamental unfairness of its position is easily exposed. The Anti–Eviction Act forbids a landlord from evicting a residential tenant "except upon good cause," *N.J.S.A.* 2A:18–61.1. The burden of proof is upon the landlord to establish it. As our Appellate Division has said:

[The Anti–Eviction Act] places no burden on the residential tenant, a person who ordinarily is not represented at trial, who is not in the business of renting apartments and is not as likely to know the law. . . . In the circumstances, it is appropriate to require an evicting landlord to prove good cause under *N.J.S.A.* 2A:18–61.1 whether or not an objecting tenant demands such proof or raises the specific legal objection.

[*Village Bridge Apts. v. Mammucari,* 239 *N.J.Super.* 235, 240, 570 *A.*2d 1301 (App.Div.1990).]

Furthermore, plaintiff, as a sponsor, has obtained the benefits of low-interest loans from the New Jersey Housing and Mortgage Finance Agency. When it accepted those loans, it did so subject to the statute and implementing regulations which created the low and moderate income housing program. And it did so conversant with that law—certainly more so than a tenant who is "not in the business of renting apartments." *Ibid.* The landlord is thus in a much superior position *vis a vis* the tenant when it comes to knowledge of the existence of regulations obligating it to serve tenants with income certification notices.

One cannot be sure whether plaintiff's failure to comply with the regulations herein was inadvertent or was a deliberate gamble on its part to see if defendant would raise lack of compliance as an affirmative defense. But one can easily envision the potential for mischief if this court were to adopt plaintiff's logic: evictions would be left to chance.

In a state which requires landlords to "turn square corners" *Sacks Realty Co. v. Batch,* 235 *N.J.Super.* 269, 284, 561 *A.*2d 1216 (Law Div.1989), *aff'd,* 248 *N.J.Super.* 424, 591 *A.*2d 660 (App.Div. 1991), plaintiff would prefer to ·cut corners. Rather, more in keeping with the legislative intent of the Anti–Eviction Act, this court holds that the landlord is charged with knowledge of the regulations and an affirmative duty to prove compliance therewith before being entitled to a judgment of possession. Otherwise, the regulations are worthless.

 Plaintiff's final argument as to the regulations' inapplicability or invalidity is without merit. The regulations are presumed reasonable, *In re Adoption of N.J.A.C. 7:26B,* 128 *N.J.* 442, 449, 608 *A.*2d 288 (1992), and the "legislative grant of authority is liberally construed to enable the agency to accomplish its statutory responsibilities." *In re N.J.A.C. 5:25A–1.1,* 266 *N.J.Super.* 625, 630, 630 *A.*2d 383 (App.Div.1993). The Legislature specifically and clearly empowered the agency to adopt regulations to provide for periodic examination of tenants' income. *N.J.S.A.* 55:14K–8b. The Legislature also gave it the power to adopt "such additional rules and regulations as shall be necessary or desirable to carry out the purposes of this act." *N.J.S.A.* 55:14K–5g. The regulations adopted by the agency clearly apply to all families that fail to recertify their income after being notified. *N.J.A.C.* 5:80–20.9. To state that these regulations apply only to non-certifying tenants whose income makes them ineligible to remain tenants ignores the plain meaning of the words.

The real nub of plaintiff's objection is that by being forced to adhere to the regulations, the process of evicting a tenant has become much more difficult. Pursuant to the Anti–Eviction Act,

all landlord need do to evict is serve a notice to cease, wait a reasonable period of time for tenant to cure, and then serve a termination notice one month prior to filing the complaint. *RWB Newton Assoc. v. Gunn*, 224 *N.J.Super.* 704, 709, 541 *A.2d* 280 (App.Div.1988). However, the regulations require substantially more. First, plaintiff must notify each family in writing between 100 and 91 days prior to the expiration of their lease that they must recertify their income. *N.J.A.C.* 5:80–20.5(c). Then, it must wait six months to see if tenant recertifies. If not, plaintiff may proceed only after receiving agency approval and only after serving a notice that eviction procedures will begin if the tenant fails to recertify within ten days. *N.J.A.C.* 5:80–20.9. If the tenant still fails to recertify, plaintiff may then evict by "following the provisions of *N.J.S.A.* 2A:18–61.1 *et seq.*" *Ibid.*

Plaintiff alleges that the agency has thus created notice requirements more stringent than those enacted by the Legislature in the Anti–Eviction Act, which is impermissible. Plaintiff is incorrect.

The purpose of the New Jersey Housing and Mortgage Finance Agency is to:

Stimulate the construction, rehabilitation and improvement of adequate and affordable housing in the State so as to increase the number of opportunities for adequate and affordable housing in the State for New Jersey residents, including particularly New Jersey residents of low and moderate income.

[*N.J.S.A.* 55:14K–2e(2).]

The purpose of the Anti–Eviction Act is to "limit the eviction of tenants to 'reasonable grounds' and to provide for '*suitable notice*' of tenants in the event of an eviction proceeding." *447 Assoc. v. Miranda*, 115 *N.J.* 522, 527, 559 *A.2d* 1362 (1989) (emphasis added).

The legislative policy underlying both acts addresses the needs of tenants in their quest to find affordable housing and to remain in said housing until suitable notice has been served upon them that their landlord has good cause to evict them. To permit a sponsor to easily remove a non-certifying family from its home would frustrate the legislative purpose of providing affordable

housing for low and moderate income tenants and the policy of giving tenants suitable notice of their pending eviction. Our Supreme Court has noted that "the housing shortage remains severe in New Jersey." *A.P. Dev. Corp. v. Band* 113 *N.J.* 485, 492, 550 *A.*2d 1220 (1988). To the extent that the regulations give the tenant a longer period of time to re-certify their income or find alternative housing, "the legislative policy is advanced, not undermined". *Harrison Assoc. v. Rent Leveling Bd.*, 215 *N.J.Super.* 1, 8, 520 *A.*2d 1150 (App.Div.1986), *certif. denied,* 107 *N.J.* 135, 526 *A.*2d 200 (1987).

For the foregoing reasons, judgment will be entered in favor of the defendant.