239 N.J. Super. 235 (1990)
570 A.2d 1301
VILLAGE BRIDGE APARTMENTS, PLAINTIFF-RESPONDENT,
v.
CAROL MAMMUCARI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1990.
Decided March 14, 1990.
*236 Before Judges DREIGHAN and R.S. COHEN.
Justin T. Loughry argued the cause for appellant (Tomar, Simonoff, Adourian & O'Brien, attorneys).
*237 Randolph I. Conn argued the cause for respondent (Greenblatt & Lieberman, attorneys).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Defendant has rented an apartment in plaintiff's complex for some 16 years. In October 1988 plaintiff presented defendant a new lease for her signature. She did not sign it. Because defendant failed to sign the new lease, plaintiff filed this summary dispossess action. From the resulting judgment for possession and the denial of a motion to reconsider, defendant appeals; we reverse.
Almost all of the summary dispossess trial testimony addressed the disputed question whether defendant had received the new lease and plaintiff's written communications about it. The Special Civil Part judge found, contrary to defendant's testimony, that she had received the lease and the communications. Because that finding was based on substantial credible evidence we accept it.
The new lease was presented to plaintiff on October 20, 1988, with a demand that it be signed in five days if defendant wished to remain a tenant. The new lease is not reproduced in the record, but we are told that it deletes a 1984 lease addendum which granted plaintiff exclusive use of two on-site parking spaces, apparently leaving her to compete with other tenants for available spaces. Every other lease term, with the possible exception of permissible rent increases, remained the same. Defendant did not respond to plaintiff's submission of a new lease or reminders about it.
In its complaint, plaintiff alleged that defendant was a residential tenant, that on October 20 she was given a new lease and five days to sign it, and she was told that if she failed to sign it, she had to vacate by November 30. The complaint alleged that on December 5 the unresponsive defendant was told she had to vacate by January 4, and that she failed to do *238 so. The complaint and plaintiff's trial evidence did not mention the change in a lease provision, or allege its reasonability.
The lease reproduced in defendant's appendix has a one-year term from July 1, 1983, to June 30, 1984. It was periodically renewed, it appears, in such a way as to give defendant a month-to-month tenancy on the same terms, except for rent increases. The lease has the following provision:
The Landlord may offer the Tenant a new lease to take effect at the end of this Lease. The new lease may include reasonable changes. The tenant will be notified of any proposed new lease at least 60 days before the end of the present Lease. If no changes are made, the Tenant may continue to rent the Apartment on a month to month basis (with the rest of the lease remaining the same). In either case the Tenant must notify the Landlord of the Tenant's decision to stay or leave at least 60 days before the end of the term. Otherwise, the Tenant will be responsible under the terms of the new lease.
The quoted provision has two consequential features. The first is that plaintiff has to give defendant 60 days' notice of any reasonable lease changes. Because termination was to be November 30, the date chosen by plaintiff, the October 20 notice did not comply. The second feature is that if defendant fails to notify plaintiff whether she will stay or leave, "the Tenant will be responsible under the terms of the new lease." The effect therefore of a tenant's failure to accept or refuse the new lease is not to abort it, but rather to put its terms into effect.[1]
Thus, the old lease contemplates the situation that arose, and resolves it with an automatic renewal under the new terms. And, plaintiff does not allege that defendant has violated any of those terms. But, plaintiff argues that it is entitled to a signature on the new lease. The answer is that plaintiff itself decided the contrary when it offered defendant the old lease which creates a renewal without defendant's signature. The renewal binds both parties.
*239 Defendant makes another argument. It is that plaintiff's failure to plead and prove the reasonability of the change in the new lease is fatal to the judgment for possession. We agree. N.J.S.A. 2A:18-61.1 requires a landlord to show good cause for the removal of a residential tenant and furnishes a lengthy list of good causes. The only relevant one is 61.1i:
The landlord or owner proposes, at the termination of a lease, reasonable changes of substance in the terms and conditions of the lease ... which the tenant, after written notice, refuses to accept; provided that in cases where a tenant has received a notice of termination pursuant to section 3g. of P.L. 1974, c. 49 (C. 2A:18-61.2), or has a protected tenancy status pursuant to section 9 of the "Senior Citizens and Disabled Protected Tenancy Act," P.L. 1981, c. 226 (C. 2A:18-61.30) the landlord or owner shall have the burden of proving that any change in the terms and conditions of the lease, rental or regulations both is reasonable and does not substantially reduce the rights and privileges to which the tenant was entitled prior to the conversion;
The proviso dealing with burden of proof applies to tenants of premises undergoing conversion to condominium, cooperative or like ownership. As to such tenants, the landlord must prove that new lease terms are not only reasonable but do not substantially reduce the tenants' rights and privileges. The language points up the fact that "reasonable" and "substantially reduce" are two separate standards. Tenants endangered by conversions are given special protection against lease changes which are proposed by landlords anxious to be rid of them, and which must therefore satisfy both standards.
The provision also speaks to the rights of tenants in non-conversion situations. It states only that changes in their leases must be reasonable, and thus suggests that some changes can be reasonable even though substantially reducing tenants' rights and privileges. See e.g., Courts v. Sgambati, 163 N.J. Super. 218, 394 A.2d 416 (Dist.Ct. 1978), aff'd o.b. 170 N.J. Super. 477, 406 A.2d 1330 (App.Div. 1979) (new clause prohibiting pets). The provision does not, however, state clearly whether landlord or tenant has the burden of proof with regard to the reasonability of any lease changes. We hold that the burden rests with the landlord.
*240 In summary dispossess proceedings, the landlord has the burden to prove every element of the claim by the greater weight of the credible evidence.[2] A landlord may not evict a residential tenant "except upon establishment of one of the following grounds as good cause:" N.J.S.A. 2A:18-61.1. The quoted language places the burden of proof on the landlord to established the existence of good cause. 447 Associates v. Miranda, 115 N.J. 522, 531, 559 A.2d 1362 (1989). It places no burden on the residential tenant, a person who ordinarily is not represented at trial, who is not in the business of renting apartments and is not as likely to know the law, and who does not have access to the landlord's records.
The court's jurisdiction in summary dispossess proceedings depends upon proof of the elements of the claim, and that includes the elements of good cause under N.J.S.A. 2A:18-61.1. Jurisdiction exists where there is evidence from which the court could find a statutory basis for removal. Vineland Shopping Center, Inc. v. De Marco, 35 N.J. 459, 464, 173 A.2d 270 (1961). In the circumstances, it is appropriate to require an evicting landlord to prove good cause under N.J.S.A. 2A:18-61.1 whether or not an objecting tenant demands such proof or raises the specific legal objection. Here, plaintiff failed to satisfy its burden to identify the change in the proposed new lease and establish its reasonability.
Finally, defendant argues that she asked to sign plaintiff's proposed new lease at the summary dispossess hearing; if guilty of any lease violation that subjected her to eviction, she argues, she should have been permitted to cure. We agree that an opportunity to sign the lease should have been afforded upon a finding that failure to sign warranted eviction. In *241 Courts v. Sgambati, 163 N.J. Super. 218, 224, 394 A.2d 416 (Dist.Ct. 1978), aff'd o.b. 170 N.J. Super. 477, 406 A.2d 1330 (App.Div. 1979), we affirmed Judge Huot's decision which held that, although a proposed lease change was reasonable, eviction should be delayed for a period of time after judgment, in part to give the tenant an opportunity to reconsider the landlord's offer of the lease containing the disputed term. See also Edgemere at Somerset v. Johnson, 143 N.J. Super. 222, 362 A.2d 1250 (Dist.Ct. 1976), where tenants unsuccessfully challenged rent increases as unconscionable, and were given 30 days after judgment to pay the disputed amount. N.J.S.A. 2A:18-55 permits non-paying tenants to cure their rent defaults by payment before entry of final judgment. See Stanger v. Ridgway, 171 N.J. Super. 466, 410 A.2d 59 (Dist.Ct. 1979). The defense of summary dispossess proceedings need not put tenants to the significant risk of lease forfeiture if their good faith defenses do not prevail.
Reversed.
NOTES
[1] Such a lease created by tenant's failure to object may or may not be enforceable in all its terms, but neither plaintiff nor defendant raises that objection.
[2] Hill Manor Apartments v. Brome, 164 N.J. Super. 295, 309, 395 A.2d 1307 (Dist.Ct. 1978). There, Judge David Baime applied that burden to the issue of unconscionability created by N.J.S.A. 2A:18-61.1f, which permits eviction for failure to pay a rent rise which is not unconscionable. Contra see Marine View Housing Co. v. Benoit, 188 N.J.Super 539, 457 A.2d 1241 (Law Div. 1982); Calhabeu v. Rivera, 217 N.J. Super. 552, 526 A.2d 295 (Law Div. 1987).