681 A.2d 125

PROSPECT POINT GARDENS INC., PLAINTIFF, v. OLEG TIMOSHENKO AND ALEX TIMOSHENKO, DEFENDANTS.

Superior Court Of New Jersey
Law Division Monmouth County
Special Civil Part
Landlord/Tenant Section

Decided April 12, 1996.

*Richard L. Zucker* for plaintiffs (*Lasser Hochman,* attorney).
*Oleg Timoshenko & Alex Timoshenko* for defendants (pro se).

HAYSER, J.T.C., (temporarily assigned).

The central issue presented in this case is whether a landlord loses his right to maintain an action under the notice requirements of *N.J.S.A.* 2A:18–61.1f when he integrates notice of a rental increase with other substantive changes in tenant's renewal lease. This issue has not been dealt with in any reported decisions.

The essential facts are not in dispute. On December 15, 1995, the defendants were served with a written notice terminating tenancy and demanding possession of their residential apartment on the last day of their lease term, February 1, 1996. The demand for possession was accompanied by a renewal rider offering a new lease term of February 1, 1996 through January 31, 1997. The proposed renewal rider included a rental increase of $30, increasing the current rent from $760 to $790.

In addition, the renewal rider proposed a number of lease modifications. The most significant modifications included: decreasing the 10 day grace period for delinquent rent to 5 days, increasing the late charge penalty from $25 to $30, increasing the 30 day notice to renew requirement to 45 days where the tenant is deemed to have renewed the lease if he does not notify landlord of an intention to leave within 45 days of the expiration of the lease, and permitting the landlord to retain the entire security deposit under certain circumstances.[1]

---

[1] The renewal rider proposed the following modifications:

A. Lease Section 6 entitled ADDITIONAL TERM is changed in its entirety. This section will now read: Unless the lease is renewed, terminated not less than *forty five (45)* days prior to expiration or extended in writing (extensions may be granted in exceptional circumstances only by, and at the sole discretion of the Landlord), and Tenant(s) continue in possession of the Apartment unit beyond the expiration of the current term, the Lease will, at Landlord's option, automatically renew under the terms and conditions stated in the offer Renew Rider and continue as if the Tenant(s) had signed the Renew Rider for the term described therein. If Landlord shall send such notice, then tenant shall be deemed to be a holdover tenant and shall have 30 days form the date of the notice to vacate the dwelling unit.

The tenants did not sign and return the proposed renewal lease and the landlord commenced this summary action for possession.

The Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1 to 61.12, was designed to limit the eviction of tenants to "reasonable grounds" and to provide for "suitable notice" to tenants in the event of eviction proceedings. *447 Associates v. Miranda,* 115 *N.J.* 522, 527, 559 *A.*2d 1362 (1989). The provisions of the Act express strong public policy to advance its beneficial ends of protecting residential tenancies so that no landlord may remove a tenant from premises leased for residential purposes without establishing good cause. *Housing Authority of City of Wildwood v. Williams,* 263 *N.J.Super.* 561, 623 *A.*2d 318 (Law Div.1993). Specifically,

B. Lease Section 11 entitled LATE FEES AND COSTS, subsection B; first sentence is amended to change the day the Landlord may apply a late rent payment charge and the amount of the late payment charge. The substituted first sentence shall be, "If the Landlord fails to *receive* the Basic Rent, Garage Rent or any Additional Rent *within five (5)* days of the due date, and/or if such payments are uncollectable upon first presentation by the Landlord, the Tenant has violated the Lease and the Tenant agrees to pay, as Additional Rents, a late charge of *Thirty ($30.00) Dollars* plus interest, at the annual compound rate of 10%, from the due date on any and all unpaid balances including prior late charges and interest."

C. Lease Section 31 subsection A, TERMINATION BY TENANT, is changed in its entirety to read "Upon expiration of the Initial Term or any subsequent term, Tenant may terminate this Lease only on the expiration date and by having given not less than *forty five (45)* days prior written notice to the Landlord."

D. Lease Section 31, TERMINATION BY TENANT a new subsection identified as "C" is added which reads: "Tenant acknowledges that in addition to any other remedies available to the Landlord, any termination of the Lease or vacating of the apartment unit prior to the expiration date shall entitle the Landlord to retain and liquidate the security deposit and any unpaid accrued interest thereon as liquidated damages for repairs, marketing and re-rental of the vacated apartment unit."

E. A Lease Addendum for Drug Free Housing is attached to this Renewal Rider and is made a part hereof.

F. A Lease Addendum providing for notification of Landlord's requirement to provide window guards is attached to this Renewal Rider and is made a part hereof.

(Emphases added)

*N.J.S.A.* 2A:18–61.1 requires a landlord to show good cause for the removal of a residential tenant and furnishes a lengthy list of what constitutes good cause. Two specific subsections are relevant to the resolution of the issue presented in this matter.

Subsection f provides that good cause for eviction exists when a tenant "has failed to pay rent after a valid notice to quit and notice of increase of said rent, provided the increase in rent is not unconscionable and complies with any and all other laws or municipal ordinances governing rental increases." *N.J.S.A.* 2A:18–61.1f.

Subsection i, in contrast, provides that good cause for eviction exists when a tenant refuses to accept, after written notice, "reasonable changes of substance in the terms and conditions of the lease, including specifically any changes in the term thereof ... [where] the landlord or owner shall have the burden of proving that any change in the terms and conditions of the lease, rental or regulations both is reasonable and does not substantially reduce the rights and privileges to which the tenant was entitled prior to the conversion." *N.J.S.A.* 2A:18–61.1i.

The notice requirements of these two subsections are substantially different. Under subsection f, to increase the rent a landlord must serve notice to quit terminating the old tenancy and simultaneously serve another notice offering a new tenancy at an increased rent. *Harry's Village, Inc. v. Egg Harbor Tp.*, 89 *N.J.* 576, 583, 446 *A.*2d 862 (1982). If proper notice is given, a tenant, by holding over, creates a new tenancy at the increased rental. *Stamboulos v. McKee*, 134 *N.J.Super.* 567, 571, 342 *A.*2d 529 (App.Div.1975). Thereafter, a landlord may institute an action for possession if the tenant does not pay the increase in rent, subject, of course, to the tenant's right to raise the defense of unconscionability of the proposed rental increase. Moreover, this places a potentially heavy burden on the tenant to prove that he is entitled to such a defense. *Calhabeu v. Rivera*, 217 *N.J.Super.* 552, 526 *A.*2d 295 (Law Div.1987).

■ In contrast, under subsection i the landlord must first serve a one month notice to terminate the preexisting tenancy and give the tenant an opportunity to accept proposed changes, and then, if the tenant refused to accept the changes within that one month, the landlord must give another full month's notice to terminate pursuant to *N.J.S.A.* 2A:18–61.2e before instituting an action for possession. *Lowenstein v. Murray*, 229 *N.J.Super.* 616, 552 *A.*2d 245 (Law Div.1988).[2] In effect, it takes a minimum of three months to evict a tenant entitled to the protection of *N.J.S.A.* 2A:18–61.1i in a summary dispossess proceeding. *Lowenstein, supra*, 229 *N.J.Super.* at 621, 552 *A.*2d 245.

The legislative scheme has been interpreted as providing for two separate categories of notices. *Id.* The first category provides grounds for eviction based on serving only one notice while the second gives the tenant a warning or an opportunity to "cure" some allegedly detrimental activity. *Id.; RWB Newton Assoc. v. Gunn*, 224 *N.J.Super.* 704, 709–710, 541 *A.*2d 280 (App.Div.1988). Subsection f falls into the first category and does not require a warning, whereas subsection i falls into the second category and requires the landlord to give a "warning" and an opportunity for the tenant to cure the alleged violation of N.J.S.A. 2A:18–61.1. *Lowenstein, supra*, 229 *N.J.Super.* at 621–622, 552 *A.*2d 245.

This notice requirement distinction between subsections f and i is critical in the case at bar. Here, the landlord served a notice to

---

2 In determining that *N.J.S.A.* 2A:18–61.1i requires two separate notices, the court in *Lowenstein v. Murray* reasoned:

Section 61.2 requires the service of a written demand and written notice for delivery of possession. Subsection e requires that the notice be served one month prior to the institution of the action. That notice requires the cause of action to have accrued before making the demand for possession. The language of subsection e makes that abundantly clear; the notice must "alleg[e] *refusal of acceptance* of reasonable lease changes." Emphases supplied. The cause of action for eviction does not accrue until after the refusal to accept those changes. After the cause of action has accrued, § 61.2e requires a one-month notice prior to institution of the action. That one-month notice terminates the month-to-month. *Lowenstein, supra*, 229 *N.J.Super.* at 619, 552 *A.*2d 245.

quit and demand for possession of premises upon the tenants giving them one month notice. Therefore, under subsection (f) notice is proper. Under subsection i, however, notice is deficient because two separate notices are required.

The landlord argued that this action falls under subsection f, not subsection i because the focus is on the rental increase and the modifications are insignificant. This court, however, disagrees. The facts in this case do not present a situation where the modifications are just an aspect of the rental increase. Rather, the changes are substantive and affect the rights of the tenants. For example, the change of the grace period from 10 days to 5 days could mean a great deal to someone living on a fixed income or receiving payments within that window of time. In addition, this modification could affect when the tenant would be subject to an action for dispossess. Another example is that under the new lease terms the tenant is deemed to have renewed the lease and is responsible for the increase in rent if he does not meet the 45 day notice requirement. Finally, there is the unbridled right of the landlord to retain the security deposit as liquidated damages, which may itself be a violation of *N.J.S.A.* 46:8–21.1.

The determination of whether proposed changes are substantive is made against the backdrop of the parties' reasonable expectation. Upon the renewal of a lease, parties expect that there could be an increase in rent. A renewal of a lease does not necessarily involve a change in other lease terms. This may have led the Legislature to separate out the refusal to accept reasonable rental increase from other reasonable changes in the lease and adopt different notice requirements for each. Accordingly, where the changes are reasonably unexpected, the tenant should be afforded more protection.

Moreover, when a renewal of a written lease is offered and the landlord combines notice of a proposed increase in rent with other substantive changes in the lease conditions, the offer is fully integrated, and the landlord loses his right to the less stringent notice requirements under *N.J.S.A.* 2A:18–61.1f and must satisfy

the two separate notice requirements of *N.J.S.A.* 2A:18–61.1i. Under a single notice, a tenant could not argue that by accepting only a rental increase, he has accepted the renewal lease and the landlord is likewise bound by what is little more than a counter offer. The clear intent of a single notice is to require acceptance of all terms in the notice. Otherwise, the tenant is left in a precarious position if he accepts only part of the landlord's proposal.

In this case, the landlord is bound by his single proposal and cannot bifurcate the rental increase from the proposed modifications in the renewal rider, giving himself the option of choosing which notice requirement he would like to satisfy. Rather, the rental increase became integrated with the other provisions, where the whole has to be considered in light of the more stringent requirements, to give the tenant the proper notice and protection afforded under the act. *See N.J.S.A.* 2A:18–61.1a, d; *Montgomery Gateway East I v. Herrera*, 261 *N.J.Super.* 235, 618 *A.*2d 865 (App.Div.1992).

 Therefore, to maintain an action for eviction where there are substantive changes and a rent increase in a single integrated proposal, the landlord must first serve a one month notice to terminate the preexisting tenancy and give the tenant the opportunity to accept all the changes, and then give a full month's notice to terminate. Once having satisfied this more stringent notice requirement, the landlord is then free to bring claims based on both subsections f and i.[3] In this way, these subsections are harmonized in assuring that the tenant is removed for "good cause," with the prerequisite of reasonable notice.

---

[3] *N.J.S.A.* 2A:18–61.1i and *N.J.S.A.* 2A:18–61.1f are not mutually exclusive but apply different standards in application. The Supreme Court in *447 Associates v. Miranda,* 115 *N.J.* 522, 559 *A.*2d 1362 (1989) distinguished the "reasonableness" requirement for lease-term change under *N.J.S.A.* 2A:18–61.1i from the more relaxed "unconscionability" standard for a rent increase under *N.J.S.A.* 2A:18–61.1f.

Since the landlord only served one notice in this case, the complaint is hereby dismissed.