294 N.J. Super. 601 (1996)
684 A.2d 83
FROMET PROPERTIES, INC., PLAINTIFF-RESPONDENT,
v.
DELORES BUEL, JOSEPH BLAZO, ROSE BOGERT, JOANNA BROOKS, JULIA DALRYMPLE, ELIZABETH DONNAHER, RITA IANNALE, VERNA INSCHO, BEVERLY & ALVIN LABARRE, KENNETH LANG, LOUISE MATTESON AND DENISE YOAK,[1] APPELLANTS-DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1996.
Decided November 6, 1996.
*604 Before Judges MUIR, Jr., KLEINER and COBURN.
John H. Fitzgerald argued the cause for appellants (Warren County Legal Services for Senior Citizens, attorneys; Mr. Fitzgerald, on the brief).
Jonathan R. Mehl argued the cause for respondent.
The opinion of the court was delivered by KLEINER, J.A.D.
This appeal arises from a landlord-tenant dispute in which the landlord, Fromet Properties, Inc., attempted to raise the monthly rent of each tenant residing at the Tamarack Mobile Home Court located in Warren County. After a four-day nonjury trial, the Law Division judge concluded that plaintiff's intended rent increase was not "unconscionable" under N.J.S.A. 2A:18-61.1(f). The judge also concluded that the rent increase was not retaliatory under N.J.S.A. 2A:42-10.12. In considering this appeal, we are asked to resolve issues raised in two prior, but conflicting, reported trial court decisions analyzing unconscionable rent increases under N.J.S.A. 2A:18-61.1(f). We must also consider, for the first time, the applicability and meaning of N.J.S.A. 2A:42-10.12 which addresses retaliatory rent increases.
Defendants-tenants appeal, contending that the trial court erred in: (1) placing the burden of proving that the intended rent increase was unconscionable upon the tenants; (2) finding that the *605 intended rent increase was not unconscionable; and (3) finding that the intended rent increase was not in retaliation for earlier interaction between the landlord and its tenants.
We conclude, as discussed in Part III of this opinion, that the Law Division properly assessed defendants-tenants' evidence as to retaliation and properly concluded that defendants had failed to prove retaliation. We also conclude, for reasons which do not completely agree with the Law Division, that plaintiff's intended rent increase was not unconscionable. We therefore affirm the judgment.

I
Fromet Properties, Inc. ("Fromet") owns several properties in Warren County including a mobile home park known as Tamarack Mobile Home Park ("Tamarack"), a restaurant, another trailer park, and a house. Tamarack consists of twenty-five concrete mobile home pad sites upon which the tenants place their mobile homes. The residents of Tamarack have been renting their pad sites pursuant to written leases dated April 1, 1992, at a monthly rent of $195.
On January 25, 1994, Fromet sent written notice to each tenant terminating their respective tenancies effective February 28, 1994, and offering each tenant a new tenancy at a rate of $250 per month. The twelve defendants involved in this appeal, and several additional tenants, rejected the increase in rent and continued to pay $195 per month as required by the former lease.
On April 5, 1994, Fromet commenced sixteen separate summary dispossession actions in the Special Civil Part. On the return day of plaintiff's summary actions, those sixteen tenants sought to consolidate all pending actions and sought removal of the consolidated action to the Law Division for the purpose of pretrial *606 discovery. Both forms of relief were granted.[2]
On June 14, 1994, defendants served a set of twenty-seven interrogatories on Fromet in an attempt to discover the financial justification for the intended rent increase. Fromet answered two interrogatories and asserted objections to the remaining twenty-five. Defendants then served plaintiff with a demand for production of documents under R. 4:18. On November 14, 1994, the Law Division judge ordered Fromet to comply with the notice to produce and to answer the unanswered interrogatories. The matter was scheduled for trial, to begin February 6, 1995.
On January 23, 1995, Fromet provided defendants with answers to the interrogatories and complied with the notice to produce documents. Among the documents produced were Fromet's federal tax returns for the years 1991, 1992, and 1993. The documents and interrogatory answers provided did not separate the income and expenses for the operation of Tamarack from the income and expenses for the operation of Fromet's other business enterprises.
When the trial commenced, the trial judge, citing Calhabeu v. Rivera, 217 N.J. Super. 552, 526 A.2d 295 (Law Div. 1987), concluded that "unconscionability" was a defense and, as such, the burden of proving an unconscionable rent increase rested with defendants. Defendants unsuccessfully argued that because Fromet's business records did not yield information readily usable to demonstrate unconscionability, that the burden of proof should shift to Fromet to prove that the intended rent increase was conscionable. Defendants cited Hill Manor Apartments v. Brome, 164 N.J. Super. 295, 395 A.2d 1307 (Essex County Dist. Ct. 1978), to support their argument.
*607 Defendants presented three witness. Two tenants described conditions within the mobile home park citing examples of disrepair, improper maintenance, inadequate snow-plowing, and drainage problems. Defendants' third witness, Michael Schmidt, was offered as an expert in fair rental value. Schmidt's qualifications were that he was a licensed real estate broker, a licensed real estate appraiser, and a certified tax assessor. He testified that he had previously been hired by other mobile home parks to assist in setting rents.
Preliminarily, Schmidt testified that there are not many vacancies in mobile home parks, that it is very expensive to move a mobile home, and that mobile home park owners do not like to accept older mobile homes into their parks. Schmidt specifically testified that in assessing the fair market rental value of a pad at Tamarack, he conducted a physical inspection of Tamarack. He then compared the rents, facilities, physical condition, and the location of Tamarack with six other mobile home parks in Warren County. Schmidt explained:
In taking each of the parks, I looked at the  you know, the physical condition of the park as they related to the unknown, whether or not there were amenities such as washing machines permitted, snow plowing, garbage removal, sanitary sewer or septic, water and the general  the overall general appearance and the physical location of the parks as they relate to Tamarack.... I made adjustments for whether or not septic or sewer was included in the monthly rent, the physical location of the properties in relationship to the subject and the overall general appeal and condition which gives me an overall adjustment. When you apply that to the monthly rent, you get an indicated fair market rent for the subject.
Schmidt then calculated what he thought the fair rental market value would be of the other six parks if they had the same conditions and facilities as Tamarack. Schmidt concluded that, after accounting for adjustments, the fair market rents of the other six mobile home parks ranged from $168 to $247, with a weighted average of approximately $200 per month.
Schmidt testified that he had never seen rent increases of the percentage that were being imposed at Tamarack "without extraordinary reasons behind them." He illustrated this conclusion with a reference to HUD regulations, where seven percent is the *608 maximum rent increase permitted for federal, subsidized housing. In Schmidt's opinion, the rent increase sought by Fromet was "one that is not governed or restrained by conscience, is unreasonable, immoderate or excessive."
Fromet presented two witnesses, Froman Mehl, its president, and Arlene Prentiss, the owner of another Warren County mobile home park.
Over defendants' objection, Mehl was permitted to testify that six other mobile home parks in the geographic area charged monthly rents in 1994 as follows: $350, $270, $325, $230, $290, $300, and $241. In Mehl's opinion, those mobile home parks were comparable to Tamarack in location and in the amenities that they offered. Prentiss testified that she charged $275 rent at her trailer park and that this sum was the median rent in trailer parks in Warren County and in neighboring Pennsylvania.

II
The Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, was enacted in 1974 to deal with a "severe shortage of housing statewide, a shortage that continues to exist today." 447 Assocs. v. Miranda, 115 N.J. 522, 527, 559 A.2d 1362 (1989) (citing A.P. Dev. Corp. v. Band, 113 N.J. 485, 492, 550 A.2d 1220 (1988)). The Anti-Eviction Act was "designed to limit the eviction of tenants to `reasonable grounds' and to provide for `suitable notice' of tenants in the event of an eviction proceeding." 447 Assocs., supra, 115 N.J. at 527, 559 A.2d 1362 (citing A.P. Dev. Corp. v. Band, supra, 113 N.J. at 492, 550 A.2d 1220 (1988)). The Anti-Eviction Act is remedial legislation, establishing tenants' rights to continued occupancy of their rental dwellings, and is "deserving of liberal construction." 447 Assocs., supra, 115 N.J. at 529, 559 A.2d 1362 (citing A.P. Dev. Corp. v. Band, supra, 113 N.J. at 506, 550 A.2d 1220 (1988); Cima v. Elliott, 224 N.J. Super. 436, 540 A.2d 918 (Law Div. 1988); Royal Assocs. v. Concannon, 200 N.J. Super. 84, 93, 490 A.2d 357 (App.Div. 1985)).
*609 N.J.S.A. 2A:18-61.1, part of the Anti-Eviction Act, establishes grounds for evicting tenants and lessees of particular residential property including mobile homes and land in mobile home parks. Subsection (f) creates as a valid ground for eviction when "[t]he person has failed to pay rent after a valid notice to quit and notice of increase of said rent, provided the increase in rent is not unconscionable and complies with any and all other laws or municipal ordinances governing rent increases." N.J.S.A. 2A:18-61.1(f) (emphasis added).
Under subsection (f), a landlord must serve proper notice to quit to a tenant, terminating the tenancy and "simultaneously serve another notice offering a new tenancy at an increased rent." Prospect Point Gardens, Inc. v. Timoshenko, 293 N.J. Super. 459, 464, 681 A.2d 125 (Law Div. 1996) (citing Harry's Village, Inc. v. Egg Harbor Township, 89 N.J. 576, 583, 446 A.2d 862 (1982)).
According to the statute, a landlord who has increased the amount of rent does not have a ground for eviction if the increase is deemed to be "unconscionable." Within the context of this litigation, the primary issue confronted by the trial judge was the allocation of the burden of proof on the question of unconscionability. As noted, defendant-tenants contend that the burden of proof rests with the landlord, or, in the alternative, where discovery proves to be fruitless, that the burden should rest with the landlord. Fromet asserts that unconscionability is a defense and that the burden of proof rests with the tenants.
In Hill Manor Apartments v. Brome, supra, 164 N.J. Super. at 308-10, 395 A.2d 1307, Judge Baime, then presiding in the Special Civil Part, wrote, in dicta, that the landlord has "information in his possession pertaining to rent structure, operational costs, debt service and taxes." Id. at 309, 395 A.2d 1307. Since eviction proceedings are supposed to be summary in nature and "pretrial discovery is not permitted," Judge Baime thought that the burden of proof should rest with the landlord. Ibid. The landlord, Judge Baime reasoned, is more readily capable of appearing at a summary dispossess proceeding prepared to offer *610 evidence that an intended rent increase is not unconscionable. Ibid. He concluded that the landlord is the party seeking affirmative relief, Ibid., and, as such, has the obligation to prove each element of N.J.S.A. 2A:18-61.1(f): that there was a rent increase, that the tenant did not pay the rent increase, and that the rent increase was not unconscionable. Hill Manor Apts., supra, 164 N.J. Super. at 309, 395 A.2d 1307.
Additionally, Judge Baime emphasized that the "Anti-Eviction Act is a `creature of the Legislature' and its provisions are to be strictly construed." Ibid. (quoting Cahayla v. Saikevich, 119 N.J. Super. 116, 118, 290 A.2d 311 (Bergen County Dist. Ct. 1972)). Judge Baime felt that a strict statutory construction mandated that the burden rest with the landlord. Hill Manor Apts., supra, 164 N.J. Super. at 309, 395 A.2d 1307. This view is supported by the plain meaning of the statute:
No lessee or tenant ... may be removed by the Superior Court from any house, building, mobile home or land in a mobile home park ... except upon establishment of one of the following grounds as good cause: ... f. The person has failed to pay rent after a valid notice to quit and notice of increase of said rent, provided the increase in rent is not unconscionable and complies with any and all other laws or municipal ordinances governing rent increases.
[N.J.S.A. 2A:18-61.1 (emphasis added).]
The language of the statute places the burden of establishing one of the possible grounds for eviction upon the landlord. Thus, a court should not dispossess a tenant from a residential unit unless it has been established by the landlord that one of the enumerated criteria exists (in this case that the rent increase was not unconscionable).
In Calhabeu v. Rivera, supra, 217 N.J. Super. at 556, 526 A.2d 295, Judge Fast examined Hill Manor, supra, and rejected its reasoning, stating that the discussion about the burden of proof was dicta. Calhabeu, supra, 217 N.J. Super. at 557, 526 A.2d 295. In Calhabeu, the landlord and two tenants in two separate summary dispossess proceedings appeared in court each assuming that the adversary had the burden to show that the rent increase was conscionable or unconscionable. Id. at 553, 526 A.2d 295. *611 Judge Fast concluded: (1) that the defendants-tenants had the burden of proving the unconscionability of the rent increase; and (2) that when this issue arises, it is proper to transfer the proceeding to the Law Division so that discovery is available to the tenants. Id. at 559, 526 A.2d 295.
Judge Fast read the statutory provision as implying that the burden should rest with the defendant. Id. at 554-55, 526 A.2d 295. He reasoned that the use of the double negative "not unconscionable" as opposed to the positive word "conscionable" was significant. Id. at 554, 526 A.2d 295. He contrasted N.J.S.A. 2A:18-61.1(f) with N.J.S.A. 2A:18-61.1(i) where the Legislature used the positive word "reasonable" and affirmatively placed the burden of showing reasonability on the landlord. Id. at 555, 526 A.2d 295. N.J.S.A. 2A:18-61.1(i) allows a landlord or owner to evict a tenant when:
The landlord or owner proposes, at the termination of a lease, reasonable changes of substance in the terms and conditions of the lease ... which the tenant, after written notice, refuses to accept; provided that in cases where a tenant has received a notice of termination pursuant to [2A:18-61.2], or has a protected tenancy status pursuant to section 9 of the "Senior Citizens and Disabled Protected Tenancy Act," the landlord or owner shall have the burden of proving that any change in the terms and conditions of the lease, rental or regulations both is reasonable and does not substantially reduce the rights and privileges to which the tenant was entitled prior to the conversion.
[N.J.S.A. 2A:18-61.1(i) (citations omitted).]
Judge Fast pointed out that in this section, N.J.S.A. 2A:18-61.1(i), the Legislature affirmatively placed the burden of showing the reasonableness of a change in a lease provision on the landlord and used the positive word "reasonable" instead of a double negative such as "not unconscionable" or "not unreasonable." Calhabeu, supra, 217 N.J. Super. at 555, 526 A.2d 295. "I find correlatively that the Legislature meant that proving the negative word `unconscionable' is the burden of the tenant." Ibid. But see Village Bridge Apts. v. Mammucari, 239 N.J. Super. 235, 570 A.2d 1301 (App.Div. 1990) (finding that the landlord has the burden of proving "every element of the claim by the greater weight of the credible evidence"). Id. at 240, 570 A.2d 1301 (citing Hill Manor, supra, 164 N.J. Super. 295, 395 A.2d 1307 as being in accord).
*612 Judge Fast also pointed out that if the burden of proof rested with the landlord, it would be manifestly unfair to tenants: "the landlord would come to court on a trial date fully armed with his financial data to support the increased rent, and the tenant would be expected to counter those proofs without previously knowing what they were." Calhabeu, supra, 217 N.J. Super. at 557, 526 A.2d 295. To rectify that imbalance, Judge Fast concluded that such matters should be transferred to the Law Division and that discovery should be available to enable tenants to meet the burden of proof. Ibid. (citing Carr v. Johnson, 211 N.J. Super. 341, 349, 511 A.2d 1208 (App.Div. 1986)).
Both Hill Manor and Calhabeu focus upon availability of information. In Hill Manor, although in dicta, the court concluded that the landlord had the information in his possession to be able to assess the costs of operation and to put forth evidence that shows the conscionability of a rent increase. Thus, it was sensible to have the landlord prove that the rent increase was not unconscionable.
Calhabeu clearly recognized the same problem, namely the access to information; Judge Fast's solution, however, was not to impose the burden of proof on the landlord but rather to transfer the case to the Law Division so that discovery is available and give the tenant the opportunity to gather the information necessary to prove its case through discovery. We disagree.
The suggested solution offered in Calhabeu totally disregards the summary nature of eviction proceedings. By their very nature, summary dispossess proceedings are designed to permit dispossession of non-paying tenants in a summary fashion. Transfer of a routine case to the Law Division in order to permit pretrial discovery is cumbersome, time consuming, costly, and disregards the reality of calendar control. Under the solution in Calhabeu, a defendant-tenant can, without prior notice and having no right to file a responsive pleading, appear before the court and assert a claim of unconscionable rent increase, thus triggering a removal of the proceedings to the Law Division.
*613 We can use the facts in this case to illustrate the problem: plaintiff's complaints were filed April 5, 1994, returnable for summary disposition April 21, 1994; the actual trial, after discovery, was first scheduled for February 6, 1995, and after four nonconsecutive days of trial, concluded April 24, 1995; the trial judge reserved decision, issued a letter opinion July 25, 1995, and executed an order for judgment on August 18, 1995. Thus, at least twelve tenants resided in plaintiff's mobile home park from March 1, 1994 until at least August 18, 1995, paying rent at the original rental of $195 per month. This is hardly, in practice, a summary proceeding.
Undoubtedly there will be some cases scheduled for summary disposition in the Special Civil Part which will warrant, pursuant to the appropriate motion, transfer to the Law Division to permit the parties to engage in pretrial discovery. Such transfers should be granted for extraordinary reasons extant in the individual case. The concept of automatic removal to the Law Division espoused in Calhabeu is unacceptable and we reject that procedure.
By our recognition that a landlord should be prepared to prove that an intended rent increase is not unconscionable on the return day of a summary disposition proceeding, we envision that most landlords will be prepared with financial information already available to them to meet the burden of proof imposed upon them by our Legislature. N.J.S.A. 2A:18-61.1(f). In those instances where the landlord is not prepared, in the interest of justice the trial court can grant a short continuance.
A corollary question focuses on the meaning of "unconscionable," a term not specifically defined in the Anti-Eviction Act. In Edgemere at Somerset v. Johnson, 143 N.J. Super. 222, 362 A.2d 1250 (Somerset County Dist. Ct. 1976), a HUD project attempted to raise rents in a municipality where rent guidelines were established by a rent leveling board. Judge Gaynor, analyzing N.J.S.A. 2A:18-61.1(f) stated:
Unconscionableness is an indefinite standard and difficult to measure. It has been defined in terms of actions which would not be acceptable to any fair and honest man, or conduct which is monstrously harsh and shocking to the conscience. In *614 the context of such definitions and the general knowledge of the court as to prevailing rents in the area of plaintiff's project, we cannot say that the rent increases ... are unconscionable.... Although the percentage of the increase is large, the determinative factors are whether the resulting rent is so great as to shock the conscience of a reasonable person and was effected for the purpose of compelling the tenant to vacate.
[Id. at 229-30, 362 A.2d 1250 (citations omitted).]
In this case, defendants argue that we should establish a multi-factor test in which the judge would examine: (1) the size of the increase in rent; (2) the landlord's expenses and profitability; and (3) how the existing and proposed rents compare to those charged at other similar rental properties in the area. In addition, defendants want the relative bargaining position of the parties to be taken into consideration. Plaintiff on the other hand, argues that the judge should concentrate on the fair rental value of the property as compared with similar properties in the area. We think that each of these factors are consistent with the discussion in Edgemere, supra, which stressed a consideration of prevailing rents in the area, the percentage of increase in rent sought, but most importantly, measured against the court's general knowledge, whether the rent increase would "shock the conscience of a reasonable person." Id. at 229, 362 A.2d 1250. This last factor is presumably broad enough to encompass the relative bargaining position of the parties which can, in some cases, be important.
We therefore conclude that, in determining "unconscionability," the trial judge may consider: (1) the amount of the proposed rent increase; (2) the landlord's expenses and profitability; (3) how the existing and proposed rents compare to rents charged at similar rental properties in the geographic area; (4) the relative bargaining position of the parties; and (5) based on the judge's general knowledge, whether the rent increase would "shock the conscience of a reasonable person." There may be other factors which, on a case-by-case basis, a court may consider, and therefore this enumeration shall not be deemed exhaustive.
In this case, the trial judge improperly placed the burden of proof on defendants. Yet, in reaching his conclusion that judgment would be entered in favor of plaintiff, he stated:

*615 [R]ecognizing that the defendant has maintained steadfastly throughout this case that the burden is on the plaintiff to demonstrate that the rent is unconscionable, I previously, as I stated, required that the defendant come forward with the proofs, but accepting the argument of the defendant right now that the burden is on the plaintiff to demonstrate that the rent is not unconscionable, based on the present record in this case, based on the fact that the landlord is not seeking anything by way of additional charges against the tenants at this time, the landlord has more than satisfied the proof requirements that the rent is reasonable, not unconscionable and is fair under the circumstances.
In reaching the conclusion that the rent increase was not unconscionable, the judge considered the testimony of each witness and gave careful consideration to the expert testimony as well as to the testimony about the prevailing rents in nearby mobile home parks. He specifically considered the fact that plaintiff had not raised defendants' rents since 1992. We note that although the increase in rent here was 28%, this fact is mitigated by the absence of any rent increase during the prior three-year period.
In reviewing a trial court's conclusions in a nonjury civil action, we are bound to grant substantial deference to the trial court's findings and conclusions. See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974). A trial court's conclusions should not be disturbed unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 484, 323 A.2d 495 (quoting Fagliarone v. Township of North Bergen, 78 N.J. Super. 154, 155, 188 A.2d 43 (App.Div.), certif. denied, 40 N.J. 221, 191 A.2d 61 (1963)). Here, we cannot conclude that the trial judge's conclusion was based on non-competent, irrelevant, unreasonable, or incredible evidence. His decision will be affirmed.

III
As noted preliminarily, the trial judge also concluded that plaintiff's decision to raise the rent was not retaliatory as defined in N.J.S.A. 2A:42-10.10, which provides:

*616 No landlord of premises or units to which this act is applicable shall serve a notice to quit upon any tenant or institute any action against a tenant to recover possession of premises, whether by summary dispossess proceedings, civil action for the possession of land, or otherwise: (a) As a reprisal for the tenant's efforts to secure or enforce any rights under the lease or contract, or under the laws of the State of New Jersey or its governmental subdivisions, or of the United States; or ... (c) As a reprisal for the tenant's being an organizer of, a member of, or involved in any activities of, any lawful organization; or (d) On account of the tenant's failure or refusal to comply with the terms of the tenancy as altered by the landlord, if the landlord shall have altered substantially the terms of the tenancy as a reprisal for any actions of the tenant set forth in subsection a, b, and c ... of this act. Substantial alteration shall include the refusal to renew a lease or to continue a tenancy of the tenant without cause.
[N.J.S.A. 2A:42-10.10 (footnote omitted).]
N.J.S.A. 2A:42-10.12 creates a presumption of a retaliatory motive under certain circumstances:
In any action or proceeding instituted by or against a tenant, the receipt by the tenant of a notice to quit or any substantial alteration of the terms of the tenancy without cause after: (a) The tenant attempts to secure or enforce any rights under the lease or contract, or under the laws of the State of New Jersey, or its governmental subdivisions, or of the United States; or ... (c) The tenant organizes, becomes a member of, or becomes involved in any activities of, any lawful organization ... shall create a rebuttable presumption that such notice or alteration is a reprisal against the tenant for making such attempt, report, complaint, or for being an organizer of, a member of, or involved in any activities of, any lawful organization. No reprisal shall be presumed under this section based upon the failure of a landlord to renew a lease or tenancy when so requested by a tenant if such request is made sooner than 90 days before the expiration date of the lease or tenancy, or the renewal date set forth in the lease agreement, whichever later occurs.
[N.J.S.A. 2A:42-10.12.]
Against the background of the quoted statutes, we may summarize the evidence presented on the retaliation issue.
In May 1992, Fromet sought to charge its tenants an additional fee of $219, a prorated share of real estate taxes and a municipal fee. When the tenants refused to pay, the landlord tried to have some of them evicted and tried to compel payment from the rest. On August 10, 1992, the judge who was then presiding found in favor of the tenants and dismissed the complaint because the landlord, a corporation, was not represented by an attorney.
*617 In December 1992, the landlord sent the tenants a new proposed lease which included provisions for collecting additional fees from the tenants. The tenants did not sign the new lease. On January 15, 1993, the landlord sent a letter to the tenants which stated: "[r]ental fees for `holdover tenants' shall be fixed at $3,300.00 per annum, but not less $275.00 per month until such time as the rental space is vacated or a new lease is negotiated with the Landlord." On February 3, 1993, the landlord sent a similar letter, this time stating that the rent for a holdover tenant would be $300 per month. Subsequently, on March 22, 1993, the landlord sent another letter stating that the rent for a holdover tenant would be $325 per month.
The landlord brought another eviction proceeding against two tenants, claiming nonpayment of rents for May and June 1993 of $325 per month. One of the two tenants that the landlord sought to evict was Al LaBarre, then the President of the Tamarack Mobile Homeowners Association. This action was dismissed when the trial judge concluded that the notices sent by the landlord to the tenants did not meet the notice requirements as set out in N.J.S.A. 2A:18-61.2.
It was subsequent to this decision that the landlord sought the rent increase that led to the present action.
In addition, there is some evidence that the tenants' participation in the Tamarack Mobile Homeowners Association might not have been to the landlord's liking. Specifically, in a letter to tenants' counsel, the landlord's principal said of the Tamarack Mobile Homeowners Association that he found it "totally uncooperative, non-communicative and frankly disruptive."
Despite this background, the trial judge concluded:
Taking into consideration all of the facts as they have been developed through the lips of the various tenants who have testified as well as the representative of the plaintiff corporation, I do not find as a matter of fact, and I find that the proofs are lacking to support the allegation and the separate defense that retaliation served as the basis for the requested rental increase.
*618 Defendant correctly argues that the facts of this case warrant applicability of the presumption of retaliation embodied in N.J.S.A. 2A:42-10.12(a) and (c). Facts which give rise to a presumption of retaliation, however, do not in every case equate that action with retaliation in fact. The presumption is rebuttable and is, in fact, rebutted when the landlord demonstrates a non-retaliatory motive for the decision to raise the rent or make a material alteration in lease terms. As noted in Silberg v. Lipscomb, "[t]he landlord can overcome such presumption only upon a showing, to the satisfaction of the court, that the decision to evict was reached independent of any consideration of the activities of the tenants protected by the statute." 117 N.J. Super. 491, 496, 285 A.2d 86 (Union County Dist. Ct. 1971) (emphasis added).
In Sacks Realty Co. v. Batch, 235 N.J. Super. 269, 561 A.2d 1216 (Law Div. 1989), aff'd, 248 N.J. Super. 424, 591 A.2d 660 (App.Div. 1991), Judge Harris held that where a group of tenants had complained about living conditions and were later evicted, they were entitled to rely on the presumption that the summary dispossess action is in retaliation, for those activities. Sacks Realty, 235 N.J. Super. at 277, 561 A.2d 1216. Judge Harris further wrote that "[t]here is unrebutted evidence that plaintiff began its initial eviction activity ... well before most, if not all, of defendants' complaints about their living conditions. The court conceives of no basis to suggest that plaintiff's actions were retaliatory under the reprisal statutes." Ibid.
In the present case, there is unrebutted evidence that Fromet sought to increase the rent before the tenants exercised their rights. In fact, it was in response to the attempted increase in rent that the tenants so exercised their rights. Applying our standard of review, Rova Farms Resort, Inc. v. Investors Ins. Co., supra, 65 N.J. at 483-84, 323 A.2d 495, we conclude that the trial judge correctly determined that plaintiff's decision to raise the rent was non-retaliatory.
Affirmed.
NOTES
[1] Portions of the record presented on appeal reflect various spellings of the names of these individuals. We are unable to discern from the record the correct spelling of their names.
[2] Subsequent to consolidation and transfer to the Law Division, four tenants withdrew from the litigation. The remaining twelve tenants participated in the ensuing trial, all represented by one attorney, and those same twelve tenants are participating in this appeal. The record on appeal does not reflect the reasons why the four tenants withdrew from the litigation or whether those withdrawing tenants remained as tenants within the mobile home park.