**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1788-23

STEEL WORKS LLC,

     Plaintiff-Respondent,

v.

NAJIBA HAKIMA,
AKHTAR M. MAHBOB
and ESMAIL MAHBUB,

     Defendants-Appellants.

_____

Submitted April 2, 2025 – Decided July 3, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. LT-006077-23.

Esmail Mahbub, appellant pro se.

Griffin Alexander, PC, attorneys for respondent (William Rodriguez, on the brief).

PER CURIAM

In this residential landlord-tenant action, defendants Najiba Hakimi, Akhtar M. Mahbob, and Esmail Mahbub (collectively defendants) appeal the January 3, 2024 judgment of possession issued in favor of plaintiff Steel Works, LLC. Because defendants relinquished possession of the property at issue, we dismiss the appeal as moot.

I.

On December 16, 2021, defendants signed a lease agreement with plaintiff for an apartment beginning on December 18, 2021 and ending in February 2023. Per the agreement, defendants owed plaintiff $2,185 in monthly rent due on the first day of each month. The agreement included a clause indicating defendants would incur late charges for failure to pay rent by the fifth day of each month, and that "[a]ll charges due pursuant to any provision of th[e] [l]ease . . . are 'additional rent.'" On December 23, 2022, defendants renewed the lease agreement with plaintiff, this time for a term between February 2023 and May 2024. The second agreement contained the same late fee and additional rent provisions but increased the rent to $2,214 per month.

Plaintiff filed a complaint on August 28, 2023 to evict defendants for nonpayment of rent, alleging $3,690.15 in unpaid rent spanning between June

2

and August 2023, indicating that sum could rise while the action was ongoing. The landlord-tenant court conducted a trial over two days.[1]

On the first day of the hearing, Carla Arizaga, the "Resident Account Manager" for plaintiff's property, testified regarding the property's Department of Community Affairs registration. Arizaga confirmed defendants leased the apartment, the amount of defendants' monthly rental and other fee obligations, including garage and amenity fees. Arizaga noted that a ten percent late fee would be charged on rent balances, and the leases each provided "[i]f [tenant] do[es not] pay all rent on or before the [fifth] day of the month, [tenant will] pay a late charge . . . [which] will be . . . a flat rate . . . or [ten percent] of [the] total rent due." She confirmed that "garage fees, utility fees, and amenity fees [are] all considered additional rent."

Arizaga testified defendants had been making monthly payments, but fell behind, providing insufficient funds on three occasions and carrying a "balance due at the end of every month." Plaintiff introduced a certificate alleging defendants' then-outstanding obligation of $4,823.40, consisting of $1,561.80 in

_____

[1] Only defendant Esmail Mahbub appeared on both hearing days, explaining the remaining tenants, his parents, were sick. Because the record reflects confusion regarding the correct spelling of Esmail's and Akhtar's last names, we use their first names to distinguish them, intending no disrespect.

rent, $854.95 in late fees, $1,000 in attorney's fees, $67 in court fees, $900 in garage fees, $200 in amenity fees, $164.65 in utility fees, and $75 in return check fees.

Esmail insisted that he paid on time every month, claiming plaintiff closed its online payment portal, causing the delay. The court sought clarification regarding when defendants failed to pay their base rental obligation, paused the hearing, and requested: (1) defendants provide documentation of past payment; and (2) plaintiff provide "a better breakdown of exactly what[ was] due and owing."[2]

On the next hearing date in January 2024, plaintiff indicated the amount of rent due had increased to $4,883.82. Plaintiff provided ledgers reflecting defendants' payment history from both its previous and current management companies, and offered testimony from Francesca Marshall, who was employed at both management companies. Marshall referenced the ledgers and testified regarding defendants' deficient payments through January 2024. The records demonstrated that even when defendants made full monthly rental payments, they failed to satisfy the total outstanding balance and late fees accrued.

---

[2] The court also directed plaintiff to file an amended complaint correcting an anomaly in the landlord's name to correspond with the other documents.

 A-1788-23

During the hearing, Esmail never testified but informed the court that he made timely payments each month. He again challenged the late fees, attributing the delay to plaintiff's online portal. The court addressed with Esmail the arrears and fees reflected in the ledgers. It observed:

> If my rent is $1,000, and I pay you $500 for January, the next month I pay you the whole thing on time. So in February, I pay you $1,000 on time, that [$]1,000 . . . [is] not really a full payment because they take half of that money, the [$]500 that was missing from the last month, and put it to the other month.

After reviewing the evidence and testimony, the court, in an oral decision, expressed its satisfaction that, based on plaintiff's documentary evidence, defendants owed plaintiff $4,451.82. The court indicated it found the testimony from both Arizaga and Marshall credible. The court explained it reviewed the lease agreement and "painstakingly went through[] not only the prior ledger of the prior management company, but [also] the current ledger[,] to determine the amounts due and owing with such particularity that no one can[]not understand the amounts due and owing." Although questioning the records concerning certain late fee entries, the court recognized that defendants "at one point fell behind in . . . rent payments, and by falling behind[,] . . . this created an ongoing balance" beginning in November 2022.

5

The court struck one improper legal fee entry in the records, decreasing the total amount owed to $4,451.82, and indicated it was "satisfied by a preponderance of the evidence that the amount alleged by the landlord, including attorney['s] fees and court costs, [wa]s proper and appropriate," and therefore entered a judgment for possession with an outstanding amount of $4,451.82 and permitted plaintiff to file for a warrant of removal. The court thereafter issued a January 3, 2024 written judgment of possession reflecting its decision granting plaintiff possession of the premises.

It is undisputed that defendants voluntarily vacated the apartment and returned their keys on January 15, 2024, before the execution of the warrant for removal.

## II.

On appeal, defendants argue that (1) plaintiff provided no statutory good cause to evict defendants, (2) defendants' eviction was illegal and plaintiff's use of late fees was "illegitimate" because most states, including New York, permit a maximum late fee of $50, (3) the lease agreement's provision incorporating fees as "additional rent" is a "predatory practice by [plaintiff] to overcharge tenant[s]," (4) plaintiff improperly renewed the lease in 2022 without informing

6

defendants of their unpaid balance, and (5) defendants asked for, but plaintiff failed to provide, a source clarifying their remaining balance due and owing.

Plaintiff contends the appeal is moot because defendants "voluntarily vacated the apartment." It alternatively contends defendants' appeal lacks merit, as the trial court's entry of the judgment of possession was supported by "competent, relevant, and reasonably credible evidence," including the ledgers proving defendants' nonpayment. Plaintiff adds that defendants' arguments on appeal were not raised below and should not be considered for the first time on appeal.

## III.

This court reviews the validity of a judgment of possession for abuse of discretion. See Cmty. Realty Mgmt., Inc. v. Harris, 155 N.J. 212, 236 (1998). "In reviewing a trial court's conclusions in a nonjury civil action, we are bound to grant substantial deference to the trial court's findings and conclusions." Fromet Props., Inc. v. Buel, 294 N.J. Super. 601, 615 (App. Div. 1996) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). This court leaves undisturbed factual findings supported by substantial, credible evidence. See Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017). Conversely, this court reviews de novo the trial court's legal

conclusions.  See Clark v. Nenna, 465 N.J. Super. 505, 511 (App. Div. 2020).

"Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm."  Stop & Shop Supermarket Co. v. Cnty. of Bergen, 450 N.J. Super. 286, 291 (App. Div. 2017) (quoting Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010)).  "An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'"  Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)).

In a summary landlord-tenant action, "where a tenant no longer resides in the property, an appeal challenging the propriety of an eviction is moot." Sudersan v. Royal, 386 N.J. Super. 246, 251 (App. Div. 2005); see also Daoud v. Mohammad, 402 N.J. Super. 57, 61 (App. Div. 2008) (holding that "[b]ecause the [Special Civil Part]'s jurisdiction is limited to determining the issue of the landlord's right to possession of the premises, and . . . the tenant vacated the premises," dismissal of the appeal was appropriate due to mootness).  However, when an "eviction carries residual legal consequences potentially adverse to" a former occupant, courts may entertain a landlord-tenant matter that is otherwise

8

moot.  <u>Sudersan</u>, 386 N.J. Super. at 251.

The undisputed facts before us demonstrate defendants vacated the premises in January 2024.  Defendants do not refute that they no longer reside in the apartment; nor do they allege adverse legal consequences beyond the termination of their tenancy with plaintiff.  Defendants assert only that the "[e]viction order . . . damages [their] ability . . . to acquire [a] new place for rent due to [plaintiff's] history of biased eviction."

Appellate courts do not decide moot issues unless "the underlying issue is one of substantial importance, likely to reoccur but capable of evading review." <u>Wisniewski v. Murphy</u>, 454 N.J. Super. 508, 519 (App. Div. 2018) (quoting <u>Zirger v. Gen. Accident Ins. Co.</u>, 144 N.J. 327, 330 (1996)).  Here, without any particularized argument or information as to how defendants have been adversely affected beyond the universal impact of eviction, we determine defendants' appeal is now moot and decline to reach the substance of defendants' claims on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

9