**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3875-23

LACRISHA GRIER,

    Plaintiff-Respondent,

v.

CRYSTAL GIBSON,

    Defendant-Appellant.

_____

          Submitted July 15, 2025 – Decided July 22, 2025

          Before Judges Susswein and Vinci.

          On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. LT-010276-24.

          The Law Offices of Levitt and Kazan, attorneys for appellant (Carl Levitt, on the briefs).

          Lacrisha Grier, respondent pro se.

PER CURIAM

    In this summary dispossess landlord/tenant action based on alleged violations of the parties' written lease agreement and habitual late payment of

rent, defendant Crystal Gibson appeals from a July 24, 2024 judgment for possession entered after trial. Having reviewed the record in light of applicable law, we affirm substantially for the reasons set forth in the trial court's oral opinion.

I.

In May 2019, the parties executed a written lease agreement whereby defendant leased the second floor of plaintiff Lacrisha Grier's three-unit rental property located on Schuyler Avenue in Newark for $1,450 per month, due on the first day of each month (the Initial Lease). The term of the Initial Lease was "month-to-month starting on May 1, 2019." It is undisputed defendant paid her rent late on numerous occasions, including several late payments in 2022.[1]

On November 2, 2022, the parties executed a second lease agreement for the property, which increased the rent to $1,600 per month (the Lease). The term of the Lease was "month-to-month starting on January 1, 2023." The Lease included the following relevant terms:

> 3. Rent. [Defendant] agrees to pay $1,600 per month, due on the first day of each month. . . . [Defendant] must pay a late charge of [seventy-five dollars] each payment that is more than [five] days late and [one

---

[1] A rent ledger of defendant's electronic payments was entered into evidence at trial but is not included in the appellate record. Our recitation of the facts relating to the late payments is based on the trial transcript.

dollar] every[]day thereafter.  This late charge is due with the monthly rent payment.

4.  Use of Property.  [Defendant] may use the [p]roperty only for the following purpose(s):  Residential use only by [defendant] and Cesaera Gibson . . . .

5.  Eviction.  If [defendant] does not pay the rent within [fifteen] days after it is due, [defendant] may be evicted.  [Plaintiff] may also evict [defendant] if [defendant] does not comply with all of the terms of this Lease and for all other causes allowed by law.  . . .

. . . .

7.  Care of the Property.  . . . [Defendant] agrees to maintain the property in as good condition as it is at the start of this Lease except for ordinary wear and tear. [Defendant] must pay for all repairs, replacements[,] and damages caused by the act or neglect of [defendant] or [defendant's] visitors.  . . .

. . . .

9.  Animals.  NO PETS[.]

Defendant paid her rent late on several occasions in 2023, and again on February 8, 2024.  On February 28, 2024, plaintiff's counsel sent defendant a notice to cease (NTC) by certified and first-class mail.  The NTC provided "[i]f you do not immediately cease (stop) doing the acts complained of, you may be evicted" for:  (1) "breaching [plaintiff's] rules and regulations which were made a part of the Lease . . . at the beginning of the lease term pursuant to N.J.S.A.

3

2A:18-61.1(d)[2]"; (2) "violating the covenants contained in the Lease . . . pursuant to N.J.S.A. 2A:18-61.1(e)(1)[3]"; "habitual late payment of rent, pursuant to N.J.S.A. 2A:18-61.1(j)[4]"; and "being a tenant so disorderly as to destroy the peace and quiet of the occupants or other tenants living in the rental premises and/or neighborhood, pursuant to N.J.S.A. 2A:18-61.1(b)[5]."

The NTC specifically stated "[s]ince about the time you moved in, in May 2019, and now, [plaintiff] has observed that you consistently pay your rent past the day it is due." "Additionally, there were months when the late fees in the

---

[2] N.J.S.A. 2A:18-61.1(d) provides a person may be evicted if "[t]he person has continued, after written notice to cease, to substantially violate or breach any of the landlord's rules and regulations governing said premises, provided such rules and regulations are reasonable and have been accepted in writing by the tenant or made a part of the lease at the beginning of the lease term."

[3] N.J.S.A. 2A:18-61.1(e)(1) permits eviction if "[t]he person has continued, after written notice to cease, to substantially violate or breach any of the covenants or agreements contained in the lease for the premises where a right of reentry is reserved to the landlord in the lease for a violation of such covenant or agreement, provided that such covenant or agreement is reasonable and was contained in the lease at the beginning of the lease term."

[4] N.J.S.A. 2A:18-61.1(j) permits eviction if "[t]he person, after written notice to cease, has habitually and without legal justification failed to pay rent which is due and owing."

[5] N.J.S.A. 2A:18-61.1(b) permits eviction if "[t]he person has continued to be, after written notice to cease, so disorderly as to destroy the peace and quiet of the occupants or other tenants living in said house or neighborhood."

4

amount of [seventy-five dollars] per month were due[,] and you have failed to pay said fees. Moving forward, kindly pay the full rent on or before the first of each month."

The NTC also stated "the kitchen cabinets were damaged," and defendant had "not paid for the kitchen cabinets to be repaired . . . in violation of [p]rovision [seven] of the Lease." In addition, defendant was "making excessive noise[] and . . . being rude and disrespectful to the other tenants[,] which impacts their peace and tranquility in the rental premises." "Specifically, in or about June 2023, [defendant] had a verbal altercation with the tenant who lives on the first floor and at or about the same time, . . . [defendant's] niece had a verbal altercation with [plaintiff] and used derogatory terms toward her."

Finally, the NTC asserted "[s]ince about November 2023, [plaintiff] observed at least one . . . adult occupant and one . . . minor child occupant not named in the Lease . . . residing within the rental premise." "On January 30, 2024, [plaintiff] observed the adult unauthorized occupant via video surveillance of the premises. The unauthorized adult occupant is believed to be a man."[6]

---

[6] The NTC also alleged defendant violated the Lease by smoking in the premises. We need not address that contention because it was abandoned at trial.

A-3875-23

On April 4, 2024, defendant paid her April rent late. On April 5, 2024, plaintiff's counsel sent defendant a notice to quit (NTQ) by certified and first-class mail demanding defendant "quit the premises[] and surrender possession thereof to [plaintiff], on or before May 31, 2024." The NTQ asserted defendant continued to "consistently pay [her] rent past the day it is due" and had "not paid the late fees in the amount of [seventy-five dollars] per month when . . . said fees were due."

The NTQ alleged defendant failed to pay for the repair of the cabinets and was "still . . . making excessive noise" and "being rude and disrespectful to the other tenants." "For a more recent example, on March 17, 2024, one of [defendant's] family members made derogatory remarks about another tenant . . . ." Also, "[o]n or about March 19, 21, and 22, 2024, [plaintiff] observed that there are still unauthorized occupants residing in the property[,] . . . and [defendant] . . . allowed and continue[d] to allow unauthorized occupants to inhabit the . . . premises, . . . in breach of [p]rovision [four] of the Lease."

The NTQ additionally asserted defendant was "disposing or leaving household trash in front of the property or in the immediate vicinity of the property rather than placing and securing the trash in trash cans or bins . . . in

6

violation of [p]rovision [seven] of the Lease." In addition, plaintiff "observed at least one . . . pet in the . . . premises . . . in violation of [p]rovision [nine] of the Lease."

On January 12, 2023, shortly after executing the Lease, defendant filed a rent adjustment petition with the Newark Department of Economic and Housing Development Rent Control Board (Board) contending plaintiff increased her rent in violation of the Newark rent control ordinance. On April 9, 2024, following a public hearing, the Board determined the increase in rent from $1,450 to $1,600 "exceeded the allowable . . . percentage," and plaintiff was not entitled to any increase in rent because she failed to register the rent adjustment with the office of rent control as required by Newark ordinance. The Board adjusted defendant's rent to $1,450 per month and determined she was "entitled to a rent rebate/credit of $2,400[]."

On June 14, 2024, plaintiff filed a verified complaint seeking eviction for the reasons set forth in the NTC and NTQ. The court conducted a trial on July 24, 2024. Plaintiff, who was represented by counsel, testified and called her mother, Melinda Grier, as a witness. Defendant, who was self-represented, also testified.

Plaintiff testified defendant did not make any additional rent payments after receiving the NTQ. At the time of trial, defendant owed unpaid rent from May, June, and July 2024, in addition to unpaid late fees as required by the Lease. Plaintiff testified defendant paid her rent electronically and produced a rent ledger, which was entered into evidence without objection, establishing defendant paid her rent late on numerous occasions from April 8, 2022, through April 4, 2024. Defendant also failed to pay the seventy-five dollar late fee applicable to late payments made after the effective date of the Lease.

In 2023, plaintiff began observing unauthorized occupants of the premises. Defendant never asked to add additional occupants to the Lease. Plaintiff introduced photographs and videos of a "male, coming in and out, using a key" on various dates in March, April, and July 2024.[7] Plaintiff saw "him come in with a key" and saw him "leaving out or coming in . . . at least three times out of a week." He was "more than a visitor." He was still residing at the property at the time of trial.

Plaintiff testified:

> It[ is] just the way [defendant] speaks to [her] is, like
> [she] feel[s] bullied . . . . [Defendant is] real hostile.
> . . . And when [she told defendant] . . . she was

---

[7] All of the photographs and videos were entered in evidence without objection but are not part of the appellate record.

A-3875-23

supposed to have been out a year ago, and [plaintiff] found a tenant. . . . [Defendant] was going along with it, that she was leaving. And [plaintiff] told her that [she] was having someone come through to look at the place to see what had to be done[] . . . prior to [defendant being] gone. Just telling [plaintiff defendant did not] want [them] in [her] apartment. She[ was] not moving. [Plaintiff was] going to have to take her to court. . . .

. . . That[ is] why [plaintiff] had to obtain an attorney to go about it, through them, so [she] would[ not] have to have [any] dealings with [defendant] at all. . . . Then [defendant told] her . . . she[ was] not moving, places are too much. . . .

. . . It[ had] been over a year that [defendant was] promising [plaintiff] to leave. And [defendant had not] done anything yet.

Plaintiff testified the premises is "registered with the State of New Jersey" as a rental property and a copy of the current Department of Community Affairs (DCA) registration was entered in evidence without objection.[8]

Plaintiff's mother testified that beginning in February 2024, she observed "another occupant in and out of the . . . second floor where . . . [d]efendant lives . . . [a]ll times of the day." He was "constantly there" since February.

Defendant "made [her] uncomfortable" and "disturbed [the] peace of [her] tenancy." On one occasion when she was "on the porch . . . getting ready for

---

[8] The DCA registration certificate is not included in the appellate record.

church one Sunday," defendant "said, '[b]e careful, . . . the stalker is out.'" "Then the niece called [her] a nosy [b****]." She told the niece she was "not nosy. And [the niece] said she did[ not] give a you-know-what."

Defendant testified she did not damage the cabinets. Rather, they fell off the wall because they were improperly installed. On cross examination, she conceded she had not paid rent since April 4, 2024. Prior to that, she paid her rent on February 8 and March 4, 2024. She confirmed the alleged unauthorized occupant depicted in plaintiff's photographs and videos was her "ex-boyfriend" and admitted she occasionally gave him a key to the premises.

After the close of evidence, the court entered a judgment for possession supported by an oral opinion. The court found the NTC was served properly, and plaintiff satisfied all applicable notice periods. It found the

> [NTC] . . . provided clear and reasonable information to inform [defendant], on February 28, 2024, that they were to cease the following acts: late payments; that they must take good care of the premises; that they must make any repairs of replacements; that they must keep the peace and the quiet of the property; no excessive noises; . . . and they must not allow any . . . unauthorized occupants.

The court likewise determined the NTQ was served properly and timely. It found "the [NTQ] specifically had . . . clear and reasonable language, saying that there was a demand for . . . possession," and plaintiff "wished to take

10

possession of the property no later than [May 31, 2024], if [defendant] failed to cease or quit any of the actions." The court determined plaintiff "registered the property with the DCA."

The court found plaintiff's testimony "credible." Based on her testimony and the rent ledger in evidence, it found defendant "breached [the L]ease by failing to pay in a timely manner, where the [L]ease indicates all payments must be due by the first[] of the month," and defendant made late monthly rent payments on numerous occasions.

The court determined defendant "was being disorderly and [a]ffecting the peace and the quiet of the occupants of the property, pursuant to N.J.S.A. 2A:18-61.1[(]b[)]." It found plaintiff's "testimony credible[] that she felt uncomfortable talking to [defendant]" and that defendant refused to leave and told plaintiff she would need to "take her to court . . . even after making a promise for over a year that she would leave." It also found the testimony of plaintiff's mother credible that defendant's "niece . . . called her a b[****]," and defendant "made her uncomfortable . . . being there in the property." "[J]ust the fact that the comment is being made and someone is there in your presence, when it[ is] their own home, . . . can make someone feel uncomfortable and . . . hostile."

The court found defendant violated the Lease by permitting unauthorized occupants based on the credible testimony of plaintiff and her mother as well as the photographs and video in evidence. It found unauthorized occupants were "by the use of keys . . . going in and out of the property . . . at all times during the year." The court "heard the testimony from . . . [d]efendant identifying who the person was," and he was "identified [by] . . . [d]efendant as an occupant" to whom "she did give . . . the key."

The court found defendant had "a pet on the premises" in violation of the Lease. It also found defendant "would . . . throw out the garbage, both in the front . . . and . . . in the back" of the property in violation of the Lease. The court rejected plaintiff's claim defendant failed to pay for repair of the cabinetry. It "found the testimony from . . . [d]efendant to be more credible" and accepted her explanation the cabinets fell because they were installed incorrectly, not due to defendant's actions.

## II.

Before us, defendant raises three arguments, all of which are asserted for the first time on appeal. First, defendant contends the court "fail[ed] to assess the predicate notices for sufficiency." Specifically, she argues the notices failed to set forth facts sufficient to show she disturbed the peace and quiet of the other

12

tenants, failed to dispose of trash properly, damaged the cabinets, or kept a pet in violation of the Lease. She also argues the notices failed to sufficiently describe the unauthorized occupants or allege facts sufficient to establish residence. She contends the NTQ was deficient because the NTC did not include violations relating to garbage disposal or pets.

Defendant asserts the NTQ for habitual late payment of rent was deficient because a claim of habitual late payment of rent "requires . . . multiple late payments" and at the time it was served on April 5, 2024, it was "not possible . . . to allege two late payments of rent." Specifically, it was not possible to allege the late payment of April rent on April 5 because "[t]he [L]ease . . . allows for payment without penalty by the fifth of the month."

Second, defendant argues the court "erred by failing to apply the anti-reprisal statute[9] after becoming aware of [defendant's] protected activity." She claims the court "should have required a showing that the determination to evict was not in any way motivated by [defendant's] protected activity."

Third, defendant claims the court "erred by improperly entering a [judgment]" in violation of N.J.S.A. 46:8-33 because "the . . . [c]ourt found that

---

9 N.J.S.A. 2A:42-10.10 to -10.14.

[p]laintiff had registered the property with the [DCA]," but "made no findings on whether [p]laintiff" registered the property with the City of Newark.

III.

A ruling on a complaint for possession is reviewed for abuse of discretion. Cmty. Realty Mgmt. v. Harris, 155 N.J. 212, 236 (1998). Accordingly, our review "does not consist of weighing evidence anew and making independent factual findings" but "determin[ing] whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999). A judge's factual findings made following a bench trial are accorded deference and will be left undisturbed as long as they are supported by substantial credible evidence. Reilly v. Weiss, 406 N.J. Super. 71, 77 (App. Div. 2009). No deference is owed to the trial court's interpretation of law or legal consequences flowing from its findings of fact. D'Agostino v. Maldonado, 216 N.J. 168, 182-83 (2013); see Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

New Jersey permits summary actions for the possession of real property where an occupant "has no colorable claim of title or possession." R. 6:1-2(a)(4). The Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, limits the

grounds on which tenants can be evicted. Green v. Morgan Props., 215 N.J. 431, 447 (2013).

The Act "was designed to protect residential tenants against unfair and arbitrary evictions." 447 Assocs. v. Miranda, 115 N.J. 522, 528 (1989). It provides a tenant cannot be evicted in a summary dispossess proceeding unless a landlord provides sufficient notice and establishes an enumerated ground for eviction. Maglies v. Est. of Guy, 193 N.J. 108, 120-21 (2007). For a tenant protected by the Act, "the effective term of the [tenancy] is for as long as the tenant wishes to remain, provided [they] pay[] the rent, . . . and provided there is no other statutory cause for eviction under [the Act]." Ctr. Ave. Realty, Inc. v. Smith, 264 N.J. Super. 344, 350 (App. Div. 1993); see also Maglies, 193 N.J. at 121. Where tenancy has been established, the landlord "has the burden of proof regarding any disputed fact relevant to 'good cause' grounds for eviction." Hale v. Farrakhan, 390 N.J. Super. 335, 341 (App. Div. 2007) (quoting N.J.S.A. 2A:18-61.1).

"Unless the landlord demonstrates compliance with these statutory provisions, a judgment for possession may not be entered." Rwb Newton Assocs. v. Gunn, 224 N.J. Super. 704, 709 (App. Div. 1988) (citing N.J.S.A. 2A:18-61.3). Pursuant to N.J.S.A. 2A:18-61.1 (b), (d), (e)(1), and (j), a tenant

may not be evicted unless the alleged offending conduct continues "after written notice to cease." Judgment of possession may not be entered if the landlord fails to serve a notice to cease. See Rwb Newton, 247 N.J. Super. at 709 (finding judgment of possession was improvidently granted "because [the landlord] failed to serve a notice to cease . . . and thus failed to provide [the tenant] with the opportunity to conform with [the landlord's] rules and regulations").

Pursuant to N.J.S.A. 2A:18-61.2, "[n]o judgment of possession shall be entered for any premises covered by [N.J.S.A. 2A:18-61.1] . . . unless the landlord has made written demand and given written notice for delivery of possession of the premises." "The notice . . . shall specify in detail the cause of the termination of the tenancy . . . ." N.J.S.A. 2A:18-61.2(h). "'Specify' means to name in a specific or explicit manner; to state precisely or in detail, to point out, to particularize, or to designate by words . . . conduct of [the] defendant which allegedly constituted . . . a violation . . . ." Carteret Props. v. Variety Donuts, Inc., 49 N.J. 116, 124-25 (1967). The notice must do more than "merely state[] a legal conclusion." Id. at 124.

"It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised

on appeal go to jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). The rule ensures that all parties have an opportunity to present relevant evidence, and the judges of the trial courts have the opportunity to address claims in the first instance.

For the first time on appeal, defendant contends the NTC and NTQ were deficient. Because the sufficiency of the statutorily mandated notices is a prerequisite to the court's jurisdiction to enter a judgment of possession, we will nevertheless address the merits of defendant's arguments. Because the sufficiency of the notices involves the application of the trial court's factual findings to statutory-notice requirements, our standard of review is de novo. See Maldonado, 216 N.J. at 182-83.

Defendant's claim the court failed to assess the notices for sufficiency is incorrect. The court reviewed both the NTC and the NTQ and determined they were sufficient. It found the NTC "provided clear and reasonable information to inform [defendant]" of the conduct she was being asked to cease. The court likewise found the NTQ included "clear and reasonable language, saying that there was a demand for . . . possession."

We are satisfied the court correctly determined the notices were sufficiently clear and stated specifically and in detail the basis for removal. The NTC provided detailed and specific factual support for each alleged violation. It catalogued defendant's habitually late rent payments, failure to pay the required late fees, and her rude and disrespectful conduct. It also described the alleged unauthorized occupants of the apartment who had been residing in the premises since November 2023 and identified a specific date on which plaintiff observed the unauthorized adult by surveillance video. The NTC set forth facts sufficient to advise plaintiff of the alleged violations and permit her a fair opportunity to cease the conduct and abate the alleged violations.

The NTQ similarly set forth the factual basis for eviction with specificity. It provided dates on which the allegedly violative conduct occurred after defendant received the NTC. It did not merely set forth legal conclusions or cite applicable provisions of the Lease. The court correctly determined the NTQ adequately set forth the factual basis for eviction as required by the Act.

We are unpersuaded by defendant's claim the NTQ could not have alleged habitual late payment of rent because it was served on April 5, 2024, before defendant's obligation to pay a "late fee" on her April rent was triggered. To be sure, to assert a claim of habitual late payment of rent pursuant to N.J.S.A.

18

2A:18-61.1(j), a plaintiff must prove "more than one late payment following a written notice to cease." 534 Hawthorne Ave. Corp. v. Barnes, 204 N.J. Super. 144, 148 (App. Div. 1985).

Defendant, however, improperly conflates the five-day late payment fee period with the late payment of rent. Under the terms of the Lease, defendant's rent was due on the first of the month, and it was late if paid thereafter. The late fee applied only if the rent was paid "more than [five] days late." Here, the NTC was served on February 28, and the NTQ was served on April 5. Defendant's rent was due on March 1 and April 1, 2024. Contrary to defendant's claim, it was possible to allege more than one late rent payment when the NTQ was served.

We part company with the court regarding its determination plaintiff provided defendant with a notice to cease encompassing the allegations she improperly disposed of garbage and had a pet in the premises. Those allegations were not included in the NTC. They were raised for the first time in the NTQ, which did not provide defendant with an opportunity to correct the alleged violations. Because plaintiff did not serve a written notice to cease as required by the Act, the court mistakenly found those violations had been substantiated. However, because plaintiff set forth other meritorious reasons for removal, we

find that error to be harmless. See R. 2:10-2 ("Any error or omission shall be disregarded . . . unless it is of such a nature as to have been clearly capable of producing an unjust result . . . .").

Defendant's remaining arguments do not implicate issues of jurisdiction or concern matters of great public interest. We, therefore, decline to address them in detail for the first time on appeal. We are however convinced defendant's arguments lack merit.

Defendant contends the court "should have required a showing that the determination to evict was not in any way motivated by" defendant's rent control petition. N.J.S.A. 2A:42-10.10(a) provides that a landlord cannot institute an action to recover possession of a premises "[a]s a reprisal for the tenant's efforts to secure or enforce any rights." N.J.S.A. 2A:42-10.12(a) creates a rebuttable presumption of retaliation if a landlord institutes an action against a tenant after "[t]he tenant attempts to secure or enforce any rights . . . under the laws of the State of New Jersey, or its governmental subdivisions." A landlord can overcome that presumption "by showing that the eviction proceeding was commenced independently of any consideration of protected activities the tenant may have engaged in." Les Gertrude Assocs. v. Walko, 262 N.J. Super. 544, 550 (App. Div. 1993); see also Fromet Props., Inc. v. Buel, 294 N.J. Super. 601,

618 (App. Div. 1996) (finding that presumption is rebutted "when the landlord demonstrates a non-retaliatory motive").

Here, the court heard testimony, which it found credible, detailing numerous violations of defendant's Lease, including evidence of the long-standing hostile relationship between the parties and the habitual late payment of rent that began long before defendant filed her rent control petition. We are satisfied the evidence was sufficient to overcome any presumption of retaliation.

Defendant's claim the court improperly entered the judgment of possession because it "made no findings on whether [p]laintiff . . . register[ed] the property with the City of Newark" is not persuasive. Pursuant to N.J.S.A. 46:8-28, a landlord must file a certificate of registration with the clerk of the municipality "in the case of a one-dwelling unit rental or two-dwelling unit non-owner occupied premises." Plaintiff's property is a three-unit rental premises. Accordingly, she was required to file her certificate of registration "with the Bureau of Housing Inspection in the [DCA]." See ibid. The court correctly determined the property was properly registered with the DCA as required by the statute.

To the extent we have not specifically addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3875-23